IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KING MICHAEL OLIVER,[1] *also known as* MICHAEL OLIVER, #B89925, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 19-CV-00792-JPG |
| vs. | )<br>) |
| ANDREW SABENS, ASHLEY NOTO, and CARBONDALE POLICE DEPARTMENT, | )<br>)<br>)<br>) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Michael Oliver, an inmate of the Illinois Department of Corrections currently incarcerated at Shawnee Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He seeks monetary damages and injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

---

[1] Although Plaintiff refers to himself as "King" Michael Oliver, the IDOC inmate locator identifies Plaintiff as "Michael Oliver." *See* https://www2.illinois.gov/idoc/offender/pages/inmatesearch.aspx (last visited September 17, 2019); *see also Bova v. U.S. Bank, N.A.,* 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

## Complaint

Plaintiffs make the following allegations in the Complaint: On April 9, 2019 at 6:30 a.m. officers entered Plaintiff's house and walked to the room where he was lying in bed. This was an unlawful entry and an unreasonable search and seizure. (Doc. 1, p. 2). The officers confirmed his identity and told him they were looking for his girlfriend because her Dad had called them. (*Id.*, pp. 2, 3). Plaintiff tried calling his girlfriend but she did not answer. (*Id.*) The officers provided their last names but refused to give their first names and badge numbers. (*Id.*). The officers left after he called his sister and asked her to call the state police. (*Id.*).

An hour later, other officers arrived including a couple of detectives, a crime scene investigator (CSI), Officer Ashley Noto, and a female officer. (*Id.*). Plaintiff recorded the events via Facebook live because he believed they came to kill and/or arrest him. (*Id.*). One of the detectives told him they were there because Plaintiff had left the scene of an accident a few days earlier. (*Id.*). The CSI asked to call Plaintiff's girlfriend. (*Id.*, p. 4). At this point everyone was outside the house and he gave the detective permission to "climb into the window to fetch his phone." (*Id.*). The detectives went in to get his phone. (*Id.*). When they returned with his phone, the battery had been removed, which was the only way to turn off the phone without his security code. (*Id.*). The phone had been recording prior to them retrieving it. (*Id.*). It was apparent that they had "done something to it evidenced by some type of rainbow dust on the front screen." (*Id.*). This was an unlawful search and seizure. (*Id.*). Plaintiff had to turn on the phone to make the call. (*Id.*). The CSI asked him to come to the station for more questions and he told them he would do so after confirming they were real police officers and that they were supposed to be in his residence. (*Id.*).

At some point, Plaintiff felt he needed to take off his shirt so that it was clear he did not

have any weapons on him. (*Id.*, p. 5). Once the officers left, he did not feel safe and so he decided to go somewhere with a lot of cameras and witnesses. (*Id.*). He went to Schnucks, which was right around the corner. (*Id.*). After he entered the store, he went to the front service desk and asked the store clerk to call the state police. (*Id.*). He continued recording via Facebook live. (*Id.*). The store clerk made the mistake of calling 911. (*Id.*). He asked the 911 dispatcher to connect him to the state police. (*Id.*). The dispatcher told him to call the "non-emergency" number but gave him an incorrect number twice. (*Id.*). The third time, the dispatcher told him she would send officers to arrest him if he called again. (*Id.*, pp. 5, 6). The dispatcher finally gave him the correct number, but the store clerk told him she could not make any more phone calls for him because he was shirtless. (*Id.*, p. 6). He asked to buy a shirt, but he did not have his wallet with him. (*Id.*).

Plaintiff asked the store clerk if there was a place to charge his phone and the clerk directed him to a power outlet by the video vending machine in the lobby. (*Id.*). He went there immediately because his battery was dangerously low and he had been asked to leave. (*Id.*). He plugged in his charger and phone and continued to record. (*Id.*). The store manager met him at the vending machine and told him he could not remain inside or use the phone because he was not wearing a shirt. (*Id.*, p. 7). The store manager directed Plaintiff to a power outlet just beyond the entry doors. (*Id.*).

Plaintiff was having a conversation with the store manager and some employees awaiting Carbondale Police Department's arrival when he saw Officer Noto approaching. (*Id.*). Officer Sabens stood in the background. (*Id.*). Another officer charged him from behind and aggressively handcuffed him so tight that his circulation was compromised causing severe pain and numbness in his fingers. (*Id.*, pp. 7, 8). The officer yelled at him to "let go of the phone" and then took his

3

phone and everything in his pockets (which was given to a friend that was with him). (*Id.*). Plaintiff was placed in the nearest police vehicle. (*Id.*). After noticing the police vehicle was equipped with video and audio recording equipment, Plaintiff asked Officer Sabens to loosen the handcuffs, but Sabens did not respond. (*Id.*).

Plaintiff asserts the following claims in the Complaint:

**Count 1:** **Unlawful Entry and Unreasonable Search and Seizure claim against unknown individuals for entering Plaintiff's residence without his permission and without a warrant.**

**Count 2:** **Unlawful Search and Seizure against unknown individuals for taking the battery out of Plaintiff's phone to turn it off and stop a recording and for doing something to his phone as evidenced by rainbow dust on the front screen.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.[2]**

## Preliminary Dismissal

Plaintiff has named the Carbondale Police Department as a defendant in this action. However, "a police department is not a suable entity in Illinois." *Courtney v. City of Chicago*, 439 F.App'x 557, 558 & n.* (7th Cir. 2011) (citing *Chan v. Wodnicki*, 123 F.3d 1005, 1007 (7th Cir. 1997)); *see also Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011) (local government liability under § 1983 is dependent on an analysis of state law). Accordingly, all claims against the Carbondale Police Department are dismissed with prejudice.

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

## Discussion

Section 1983 creates a cause of action based on personal liability and predicated upon fault. Therefore, to be liable under Section 1983, the individual defendant must have caused or participated in a constitutional deprivation. *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994). Plaintiff alleges violations of his constitutional rights with regard to the original entry into his home by unidentified officers and the detectives who tampered with his phone. These individuals are not named as defendants. To state a claim, Plaintiff must specifically identify the individual, by name or Doe designation. *See Bell Atlantic Corp.*, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2). The Court will not treat individuals not listed in the caption as defendants, and any claims against them are considered dismissed without prejudice. *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be specified in the caption).

There are no allegations that implicate Defendants Sabens and Noto in the alleged violations of Plaintiff's constitutional rights. Under Federal Rule of Civil Procedure 8, the Complaint must include a short, plain statement of the case against each individual. Merely naming a party in the caption of a Complaint is not enough to state a claim against him. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Because Plaintiff failed to allege specific acts of wrongdoing by Sabens and Noto, the personal involvement requirement necessary for Section 1983 liability is not met. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Accordingly, Sabens and Noto will be dismissed without prejudice. Further, because the Complaint does not present a colorable constitutional claim, it will be dismissed for failure to state a claim upon which relief may be granted.

## Pending Motion

Plaintiff filed a request for the Clerk of Court to issue subpoenas (Doc. 3) for various video and audio recordings, documents from the Jackson County Jail, 911 calls, and documents related to a case number referenced in Officer Noto's statement. This request is discovery related and is premature and improper at this time as Plaintiff's Complaint has not survived preliminary review under 28 U.S.C. § 1915A. The request will, therefore, be denied.

## Disposition

The Clerk of Court is **DIRECTED** to add "*also known as* **Michael Oliver**" to Plaintiff's name on the docket in the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS ORDERED** that this matter does not survive preliminary review under 28 U.S.C. § 1915A, and the Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Defendant Carbondale Police Department is **DISMISSED** with prejudice and the Clerk of Court is **DIRECTED** to **TERMINATE** it as a party in the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** that Plaintiff's request for the issuance of subpoenas (Doc. 3) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs is **GRANTED** leave to file a "First Amended Complaint" on or before **October 17, 2019**. Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall count as one of Plaintiff's three allotted "strikes" under 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any relevant exhibits he wishes the Court to consider. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Should Plaintiff decide to file a First Amended Complaint, it is strongly recommended that he use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 19-cv-00792-JPG). To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. See 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 19, 2019**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**